Argued December 19, 1929; affirmed May 20, 1930.

ALGOMA LUMBER CO. *v.* HERLIHY ET AL.
HERLIHY ET AL. *v.* ALGOMA LUMBER CO.

(288 P. 202)

*J. H. Carnahan* of Klamath Falls for appellants.

*Henry E. Perkins* of Klamath Falls (R. C. Grossbeck of Klamath Falls on the brief) for respondent.

BEAN, J. ■ On October 3, 1914, the Algoma Lumber company, a corporation, desiring to reach certain timber owned by it in Klamath county, Oregon, entered into an agreement with Ellen Herlihy and Stephen Herlihy whereby defendants executed a deed to plaintiff of a right of way across defendants' land for a logging railroad. About May 5, 1915, the plaintiff discovered a wet place, or spring, on the property of defendants, adjacent to the right of way, and entered into an agreement with defendants whereby the defendants gave to the Algoma Lumber company in addition to their right of way, 50 by 250 feet "for water development and tanks; conditions of this right of way otherwise to be same as present right of way; on demand, we agree to replace this right of way deed with a more formal one."

Upon the execution of the deed of the right of way for the railroad, plaintiff constructed its railroad. Upon the execution of the agreement plaintiff fenced the tract therein described and occupied it, developed a spring thereon and used the water therefrom until October, 1918, when the plaintiff, desiring to discontinue its operation at that point for a time, but not desiring to abandon its right under its right of way deed and agreement, which are exhibits "A" and "B" in the record, entered into a moratorium agreement with the defendants, whereby plaintiff might cease operations and return at any time within fifteen years and retain its right under the conveyance. During the time plaintiff was not operating, defendants would have the use of the spring and right of way, as per letter of the plaintiff's of that date. Afterwards the plaintiff removed its tanks, rails and equipment and ceased to use the right of way and the spring.

In February, 1927, the plaintiff sought to reoccupy the premises, but was refused possession thereof by defendants. Thereupon plaintiff brought the equity suit and the temporary injunction, which plaintiff now seeks to have made permanent, was issued.

Defendants answered in the equity suit, setting up a counter claim for damages, which was denied by plaintiff. Defendants herein also brought a law action for damages. The plaintiff answered in the action, alleging the execution by defendants of the deeds and agreement herein mentioned and denied liability and damages.

The defendants admit they executed and delivered to plaintiff a deed to the right of way to the road, and the deed for the right of way of the premises where the spring was located, and the moratorium agreement.

There is much dispute, as shown by the record, as to whether there was a spring at the place mentioned when the plaintiff took possession, some of the witnesses describing it as a spring and some of them as a wet, muddy place. According to our view, it is not material which it is termed.

This agreement, or deed, of the Herlihys given to plaintiff for water development and tanks, plainly indicates that it was the intention of the defendants to permit the company to develop and use water upon the land for use upon its railroad. Development, as used in the deed, means to devolve; to roll onward or downward; to expand; to lay open; in a sense, to improve. See Webster's Int. Dictionary. We see no conflict between this definition and that in the case of *Mountain Lake Min. Co. v. Midway,* 47 Utah 346 (149 P. 929), where it was held that the defendant, in order to develop the water, must uncover and bring to the

surface water which theretofore had not been brought to the surface, or had not been used by others after it came to the surface through its natural processes.

The plaintiff dug back into the hill about 10 feet to develop the spring and obtained a supply of water sufficient to nearly fill a two and one-half inch pipe, running to its water tank. There are other springs on the side of the hill where the spring in question is located and between that and defendants' house and barn.

Defendants complain that by blasting out the spring in question it caused the other springs to go dry and decreased the water that defendants used for watering livestock and irrigation. An interesting history of things which have affected the supply of water and the changes that have taken place, is contained in the record.

The construction of the Southern Pacific railroad between Klamath lake and defendant's premises, it seems, had an effect upon the water upon their low land. It is in evidence that during the last three or four years, especially during the dry season, particularly in winter, the water in the springs in that region has decreased.

We pause to note it does not appear that the defendants have developed another spring so as to ascertain whether they could obtain the usual supply of water, or not. However these conditions may be, we are governed in this cause by the instruments to which we have referred, which bind the defendants. The beginning of the description of the right of way of 50 by 250 feet for the spring, about which there was some controversy, is as follows:

"Commencing at a point on south side of present right of way and line south from the east side of culvert at foot of bluff, thence running easterly two

hundred and fifty feet (250) along the south side of present right of way, thence south fifty (50) feet, thence westerly parallel to present right of way two hundred and fifty (250) feet, thence north to a point of beginning, this right of way being for the use of the Algoma Lumber company for water development and tanks; conditions of this right of way otherwise to be same as present right of way; on demand, we agree to replace this right of way deed with a more formal one.''

Years ago there were poles laid across the old county road near the 50 by 250 feet, or spring tract, of land, which served as a sort of culvert (which was not covered), for water to pass over the county road, which road appears to have been abandoned after the construction of the Dalles-California highway.

It is claimed by defendant that the survey of the spring tract should begin at this old culvert. The deed of the easement of October 3, 1914, provided for ''one culvert for cattle'' to be located on a certain forty-acre tract, ''within 50 feet of the former location of county road.'' The ''cattle culvert,'' or pass, was constructed and the east side thereof was taken as the initial point of the survey of the 50 by 250 feet, or spring tract, by the civil engineers.

There can be no doubt but that is the proper beginning point of such survey as shown by defendants' deeds, and that it was so understood by the parties who had in mind the railroad right of way. In any event, as stated by the engineer who made the survey and map for defendants, either survey would embrace the spring, which is the bone of contention in these cases.

■ Defendants claim damages to their land by plaintiff outside of the right of way. In this connection the

trial court found that the defendants had not sustained the burden of proof in this respect. The findings of the circuit court in the law action have the force and effect of the verdict of a jury and, under the testimony in the case, there being evidence to support the finding, it can not be disturbed. As to the construction of the several instruments and the equities of the case, we concur in the findings of the trial court.

There is a wealth of discussion in the brief on the part of defendants, relating to water for irrigation, which perhaps has a remote bearing upon the question in the case, but we do not deem it necessary to refer to several authorities cited. Counsel for defendants complain that the decree gives the plaintiff permanent title to the premises instead of an easement. There can no question arise in this regard. The deed of October 3, 1914, plainly provides that after the iron and steel rails of the logging railroad are finally removed from the right of way, the grantors shall have the right to enter the premises and that all rights and privileges granted and conveyed by the deeds shall revert to the Herlihys.

Defendants also complain of the injunction order preventing defendants from using the surplus water of the spring over and above that necessary for plaintiff's use. The injunction order should be so phrased as to permit the surplus water, after a sufficient amount thereof is taken for plaintiff's use, in connection with its logging railroad, to be turned down towards the defendants' buildings and lowland, so that such excess can be used by defendants. This the plaintiff company offers to do.

The judgment and decree of the trial court is affirmed. In view of the fact that the defendants have

been caused some inconvenience to the use of their other land, on account of the right of way of the railroad, each party will pay his or its own costs upon this appeal.

COSHOW, C. J., and BELT, J., concur.